UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF LOUISIANA

IN RE:

**SOUTHERN HEALTHCARE SYSTEMS, INC.**   CASE NO. 02-11621
      DEBTOR   CHAPTER 11

**BANK ONE, N.A.**   ADV. NO. 02-1086
      PLAINTIFF

VERSUS

**HEALTH CARE CAPITAL CONSOLIDATED, INC.,
HEALTH CARE CAPITAL, INC., R. DONOVAN MUNFORD,
AS TRUSTEE FOR THE IBRAHIM FAMILY TRUST, PAG
PARTNERS, L.P., PAUL A. GREEN, RICHARD L. GREER,
HOWARD T. HINSHAW, M.D., WAYNE S. MOREHEAD,
MATTHEW S. ROBINSON, and D. WILLIAM NIDA, AS TRUSTEE
FOR THE DARIUS WILLIAM NIDA, JR. TRUST**
      DEFENDANTS

**MEMORANDUM OPINION**

Defendants Health Care Capital Consolidated, Inc.( "HCCC"), Health Care Capital, Inc. ("HCC") and various individuals and entities who will be referred to collectively herein as the "Noteholders," have moved to dismiss or, in the alternative, for partial summary judgment[1] dismissing Bank One's Complaint and Amended Complaint[2] on several grounds. The Court will deny the motion as to Count I of the complaint, but will grant the motion as to Count II (recovery

---

[1] The defendants moved in the alternative for partial summary judgment because they supported the motion with matters outside the pleadings. The Court's ruling on the motion for partial summary judgment rests on the same grounds as those on which it denies the motion to dismiss.

[2] Bank One's original complaint alleged jurisdiction on the basis of diversity only. The bank later amended the complaint with leave of the Court to include 28 U.S.C. §1334 as a basis for jurisdiction.

from the Noteholders) and Count III (rescission of the assignment from HCC to HCCC) and dismiss those counts for lack of jurisdiction.

## I. FACTS

Health Care Capital, Inc. ("HCC"), now a wholly owned subsidiary of HCCC, obtained the rights to acquire six nursing homes ("Facilities") pursuant to six separate purchase agreements in early 1990. HCC assigned its rights under the purchase agreements to the debtor on March 29, 1990. In exchange for the assignment, HCC received $1,000,000 cash and a subordinated promissory note ("Subordinated Note"), dated April 2, 1990, in the principal amount of $3,000,000. The Subordinated Note was secured by a mortgage on the Facilities.[3] Apparently as part of the same transaction, the debtor and HCC also entered into six separate management agreements under which HCC was to manage the Facilities for a term of five years beginning on April 1, 1990. The Subordinated Note contains the following provision relative to management of the Facilities: "[I]n the event that [HCC] is terminated as Manager of the Facilities . . . , the holder of this note shall have the right to approve its successor manager, as well as any subsequent manager to be appointed during the term of this note."

The debtor refinanced the bonds in 1996 through a new bond issue. In order to secure payment on the bonds, Bank One issued three letters of credit for the account of the debtor. Pursuant to three Reimbursement Agreements, the debtor obligated itself to reimburse Bank One for any draws on the letters of credit. The debtor's obligations under the Reimbursement Agreements are secured by a deed of trust and mortgage on the Facilities, and security interests in

---

[3] The debtor raised the funds for the acquisition through a bond issue. The bonds were secured by senior liens on all assets of the Facilities. The mortgage securing the Subordinated Note is subordinated to the lien securing the bond debt.

the Facilities' related intangible interests. According to Section 9n. of the Reimbursement Agreements, if the debtor terminated HCC as manager of the Facilities, the debtor was required to "replace the then current Operator with a Person acceptable to Bank upon terms and conditions acceptable to Bank prior to the effective date of such termination."

HCC, Bank One and the debtor entered into a subordination agreement dated July 1, 1996 ("Subordination Agreement"). The Subordination Agreement's preamble recites as that as "a condition precedent to [Bank One's] obligation to issue [the] letters of credit . . . Subordinated Creditor [i.e., HCC] shall subordinate all obligations of Debtor to Subordinated Creditor . . . to all obligations of Debtor to Senior Creditor [i.e., Bank One]. . . ." HCC warranted in paragraph 13(a) of the Subordination Agreement that "the recitals at the beginning of this Agreement are true and correct in all respects."

In connection with the 1996 bond financing and the Subordination Agreement, the debtor and HCC also executed a Second Amendment to Subordinated Promissory Note on July 1, 1996. In addition, HCC executed a pass-through note dated January 2, 1998 in favor of each of the Noteholders, pursuant to which the Noteholders obtained certain rights and interests in the Subordinated Note.

In April 1999, the debtor notified HCC of its intention to terminate the 1995 management agreements, effective June 30, 1999. HCC responded by suing the debtor in the United States District Court for the Middle District of Louisiana for damages for wrongful termination of the management agreements, and specific performance of its right, under the Subordinated Note, to approve any successor manager of the Facilities. HCC also requested a temporary restraining order, a preliminary injunction and a permanent injunction to enforce specific performance under the Note.

Bank One was not a party to that suit. The district court dismissed the complaint without prejudice on the ground of plaintiff's lack of standing.[4]

HCCC sued the debtor in the Superior Court of DeKalb County, Georgia in February 2000. The Georgia complaint urged relief on essentially the same factual and legal grounds as those HCC had alleged in the Louisiana federal court lawsuit. HCCC did not make Bank One a party to that suit either.

On September 1, 2000, the Georgia trial court granted HCCC's motion for summary judgment. It held that the Subordinated Note required the debtor to obtain HCCC's approval of any manager or operator of the Facilities upon termination of HCCC's management contracts. The September 1, 2000 order also enjoined the debtor itself from operating the Facilities or retaining another operator without HCCC's consent. Finally, it set out a detailed process for appointment of a new manager to be approved by all interested parties, including the debtor and Bank One, even though Bank One had not appeared in either the Georgia case or in the Louisiana federal action. The Georgia Supreme Court affirmed the Georgia trial court order, specifically concluding that Bank One, a senior lender, was not an indispensable party.

After the Georgia Supreme Court affirmed the September 1, 2000 order, Bank One sued HCC and HCCC in the United States District Court for the Western District of Louisiana on basically the same grounds as those asserted in this adversary proceeding. The district court adopted the magistrate judge's recommendation that the case be dismissed unless Bank One amended its complaint to join the Noteholders. The court later dismissed the case without prejudice pending the outcome of the debtor's bankruptcy case.

---

[4] HCC had assigned the Subordinated Note to HCCC before HCC filed suit.

4

The Georgia trial court entered an order on November 2, 2001 permanently enjoining the debtor from operating the Facilities, and gave the interested parties twenty days to jointly approve an independent manager. Its opinion recognized that Bank One did not want to approve any change in management from the debtor, so the order also provided that the trial court would appoint a receiver if the parties could not agree on an independent operator. In a February 19, 2002 order, the Georgia court ruled that it would appoint a receiver for the Facilities unless the debtor had contracted with an agreed independent operator by March 21, 2002. The Georgia Supreme Court affirmed both the November 2, 2001 and the February 19, 2002 orders. However, before the trial court made good on its intention to appoint a receiver, the debtor filed its petition for chapter 11 reorganization in this Court.

## II. COUNT I

In Count I, Bank One seeks a ruling that, under the Subordinated Note, its right to designate a manager for the Facilities trumps that of HCCC and any other entity.

As an initial matter, the Court disagrees with the parties' contention that the dispute in Count I is a claim within the "related to" jurisdiction of 28 U.S.C. §1334, and their conclusion that this Court can only make proposed findings and conclusions subject to review and approval of the district court. Management of the debtor is a fundamental matter in a bankruptcy case. It can make the difference between a successful reorganization and a liquidation of the debtor's assets, much like other proceedings Congress committed to the bankruptcy courts as core proceedings under 28 U.S.C. §157(b)(2). Bankruptcy courts are best positioned to resolve disputes bearing on the selection of a manager in a way that will protect the debtor's estate and creditors. Thus, the "catch-all" category of 28 U.S.C. §157(b)(2)(A) (matters concerning the administration of the estate) encompasses

5

resolution of the issue of entitlement to appoint management for a chapter 11 debtor in possession. *See Matter of SCK Corp.*, 54 B.R. 165 (Bankr. D.N.J. 1984) (control of debtor goes to heart of administration of estate and bankruptcy court has jurisdiction to determine where control resides.)

The defendants move for dismissal of Count I on several grounds, most of which HCCC previously urged in support of dismissal of the chapter 11 case itself. The grounds are addressed in turn.

### A. Res Judicata and Collateral Estoppel

The defendants claim that Bank One is bound by the decisions of the Georgia Supreme and trial courts, even though it was not a party to any of those proceedings.[5] The defendants agree that Georgia law is applicable for the purpose of analyzing the preclusive effect of the Georgia state court judgments. 28 U.S.C. §1738; *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000). In order for res judicata to apply under Georgia law, there must be: "(1) identity of cause of action; (2) identity of parties; (3) prior adjudication by a court of competent jurisdiction; and (4) a full and fair opportunity for the party against whom the doctrine of res judicata is raised to have litigated the issues in the first action." *Chrison v. H&H Interiors, Inc.*, 500 S.E.2d 41, 47 (Ga. App. 1998). Collateral estoppel applies "if the same issues were litigated by the parties or their privies in the previous action, though it is not essential that it be upon the same cause of action." *Smith v. Wood*, 154 S.E.2d 646, 648 (Ga. App. 1967) (citations omitted).

---

[5] Given the relationship among the various agreements concerning the Facilities, both HCCC and Bank One had an interest in securing a prompt determination of their rights *vis a vis* each other to select management for the debtor's nursing homes. However neither party has explained to the Court's satisfaction the reason why Bank One was not a party to the Georgia litigation.

6

Applying these factors, Bank One plainly is not precluded from bringing suit for the claims in Count I because it was not a party to the Georgia proceedings or in privity with a party in the litigation. Indeed, the defendants' argument that Bank One participated in the state court proceedings and should be treated as a party is undermined by the very state court judgments on which it relies. The September 1, 2000 order granting HCCC's motion for summary judgment[6] lists the debtor as the only defendant. Moreover, the Georgia Supreme Court's opinion in *Southern Healthcare Systems, Inc. v. Health Care Capital Consolidated, Inc.*, 545 S.E.2d 882 (Ga. 2001)[7] contained a specific finding that the senior lenders, including Bank One, were not indispensable parties to that litigation.

Despite this, the defendants urge that the Court should treat Bank One as though it had participated in the Georgia state court litigation on a theory of "virtual representation." *See United States v. Texas*, 158 F.3d 299 (5th Cir. 1998); *Louisiana Seafood Mgmt. v. Foster*, 53 F. Supp. 2d 872 (E.D. La.1999), *aff'd*, 244 F.3d 134 (5th Cir. 2000). In *United States v. Texas*, the Fifth Circuit recognized four exceptions to the preclusive effect of a judgment upon strangers to the litigation. They are: privity; a class or representative suit; control; and "virtual representation." *Texas*, 158 F.3d at 305-6, n.6. The Court already has held that there was no privity between Bank One and the debtor in the state court suit. Additionally, the Georgia proceeding was not a class action. Therefore, the defendants are left to argue that Bank One controlled the debtor, or that the debtor was its virtual representative.

---

[6] Exhibit 3 to the defendants' motion to dismiss.

[7] Exhibit 5 to the defendants' motion to dismiss.

The cases on which defendants rely support the proposition of virtual representation in the public rights context, not in the context of a two (or three) party dispute such as the claim Bank One brings to this Court. The defendants cite no Georgia cases to support an extension of Georgia law to allow preclusion by virtual representation or "implied privity." Moreover, the record does not support a finding that Bank One controlled the debtor, had such a relationship with the debtor that it should be treated as having been virtually represented by the debtor, or exercised control over the debtor to the extent necessary to characterize the debtor as its representative for purposes of issue or claim preclusion.

The defendants' argument seems to rest on the Georgia Supreme Court's holding that the debtor's senior lenders (including Bank One) were not indispensable parties to the state court proceedings. However, this finding itself makes plain that issues relating to Bank One's claim of a superior right to approve a successor manager for the Facilities, and the effect of the Subordination Agreement, were not litigated in Georgia.

The Court declines to hold that Bank One is bound by the debtor's actions in the Georgia court based on the record, and therefore rejects res judicata and collateral estoppel as grounds for dismissing Count I of Bank One's complaint.

### B. Rooker-Feldman Doctrine

Next, the defendants again urge, as HCCC did in seeking dismissal of Southern Healthcare's chapter 11 case, that the *Rooker-Feldman* doctrine bars the Court's exercise of jurisdiction over this proceeding. The *Rooker-Feldman* doctrine precludes direct and indirect attempts by federal plaintiffs to undermine previous state court decisions. *See Lemonds v. St. Louis County*, 222 F.3d

488 (8th Cir. 2000). However, *Rooker-Feldman* is not applicable to Bank One's claims in this adversary proceeding because the requirements for its application do not exist.[8]

First, Bank One was not a party to the Georgia proceedings. *Rooker-Feldman* does not apply where the party in the second suit was not party to the first suit. *See Montecino v. Louisiana*, 55 F. Supp. 2d 547 (E.D. La. 1999); *Johnson v. Odom*, 901 F. Supp. 220 (W.D. La. 1995), both citing to *Johnson v. Degrandy*, 512 U.S. 997, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994). Second, the suit is not barred by res judicata, collateral estoppel or any other theory requiring deference to an earlier decision of another court. Third, Bank One is not seeking a determination of federal issues that were decided by the Georgia state courts or that are inextricably intertwined with those courts' judgments. Indeed, Bank One is not seeking a determination of federal issues at all. Its complaint asserts state contract law claims that, despite the defendants' arguments to the contrary, differ from those raised in the Georgia courts. Fourth, Bank One did not have a reasonable opportunity to raise its claims in the Georgia proceedings because it was not a party to those proceedings, either directly or by privity with any entity that was a party.

### C. Anti-Injunction Act

The federal Anti-Injunction Act, 28 U.S.C. §2283, limits the authority of federal courts to

---

[8] The requirements are: (1) the parties must be the same in both cases (*see Johnson v. Odom*, 901 F. Supp. 220, 223 (W.D. La. 1995)); (2) the later lawsuit is barred by res judicata or collateral estoppel, or the prior state court judgment is otherwise entitled to full faith and credit (*see American Airlines v. Dept. of Transportation*, 202 F.3d 788, 801, n.9 (5th Cir. 2000)); (3) the federal court is being asked to decide federal issues decided by a state court or "inextricably intertwined" with a state court judgment (*see Williams v. Adkinson*, 792 F. Supp. 755, 762 (M.D. Ala. 1992) (citation omitted)); and (4) the party had a "reasonable opportunity" to raise the issues in the prior proceeding (*see Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983)).

enjoin state court proceedings.[9] The defendants argue that the Bank One lawsuit for declaratory relief is barred by the Act, relying on *Texaco, Inc. v. Duhe*, 44 F. Supp. 2d 809 (W.D. La. 1998). However, the defendants concede that the Anti-Injunction Act is not triggered when the federal plaintiff is not bound by the prior state court judgment. *Harris County v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 313 (5th Cir. 1999). Because the Court has concluded that Bank One is not bound by the Georgia state court judgment, the Anti-Injunction Act does not apply.

### III.  COUNTS II AND III

Counts II and III of the complaint and amended complaint involve claims by a non-debtor (Bank One) against non-debtors (HCC, HCCC and the Noteholders). Bank One in Count II makes a claim for breach of the Subordination Agreement, and seeks recovery of payments allegedly collected by HCC, HCCC and the Noteholders after the debtor defaulted on the Reimbursement Agreements. Count III is another breach of contract claim. In it, the bank seeks rescission of the assignment from HCC to HCCC and the pass-through notes allocating a share of the payments under the Subordinated Note to the Noteholders. Bank One alleges that both the assignment and the pass-through notes violated the Subordination Agreement.

Bank One has not alleged that the outcome of the claims made in either Count II or Count III of its complaint conceivably could have an effect on the debtor's estate, so as to bring them within this Court's jurisdiction. *See Matter of Zale Corporation*, 62 F.3d 746 (5th Cir. 1995) and *Matter of Wood*, 825 F.2d 90 (5th Cir. 1987). Bank One's recovery on either count would inure only

---

[9] 28 U.S.C. §2283 provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or when necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

to its benefit, and not the estate's. Thus, these claims are not even "related to" the underlying bankruptcy case.

Nor can the Court adjudicate the claims on the ground that they fall within diversity jurisdiction allowed under 28 U.S.C. §1332. Even assuming that the parties are diverse, under 28 U.S.C. §157 and Local Civil Rule LR83.4.1 referring bankruptcy matters to this Court,[10] the allegations of Counts II and III do not bring the claims within the realm of matters that can be referred to this Court for disposition. Accordingly, Counts II and III must be dismissed.

## IV.  CONCLUSION

Bank One is not bound by the Georgia state court judgment under any of the theories advanced by the defendants in their motion. Indeed, this Court is the first forum in which all the necessary parties are present, and the first Court that is positioned to adjudicate all the disputes among entities with interests in the Facilities. For these reasons, the Court will enter an order denying the defendants' Motion to Dismiss or, in the alternative, Motion for Partial Summary Judgment as to Count I of the Complaint. The Court will enter an order granting the Motion to Dismiss Counts II and III.

Baton Rouge, Louisiana, January 28, 2003.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[10] 28 U.S.C. §157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases arising under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section. . . ." Local Civil Rule LR83.4.1 tracks this language, providing that "[u]nder the authority of 28 USC 157 the district court refers to the bankruptcy judges of this district all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11."