UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF LOUISIANA

IN RE:

**SOUTHERN HEALTHCARE SYSTEMS, INC.**     CASE NO. 02-11621
      DEBTOR                                                                      CHAPTER 11

**BANK ONE, N.A.**                                                            ADV. NO. 02-1086
      PLAINTIFF

VERSUS

**HEALTH CARE CAPITAL CONSOLIDATED, INC.,
HEALTH CARE CAPITAL, INC., R. DONOVAN MUNFORD,
AS TRUSTEE FOR THE IBRAHIM FAMILY TRUST, PAG
PARTNERS, L.P., PAUL A. GREEN, RICHARD L. GREER,
HOWARD T. HINSHAW, M.D., WAYNE S. MOREHEAD,
MATTHEW S. ROBINSON, and D. WILLIAM NIDA, AS TRUSTEE
FOR THE DARIUS WILLIAM NIDA, JR. TRUST**
      DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Bank One, N.A. ("Bank One") has moved for partial summary judgment on its First Amended Complaint. The motion as originally filed sought judgment on all counts of the Amended Complaint. However, in its January 28, 2003 judgment, the Court dismissed all counts of the Amended Complaint except Count I. That count seeks a declaratory judgment that the contract right of Health Care Capital Consolidated, Inc. ("HCCC") and the other defendants to appoint a successor manager for the

1

debtor's Facilities[1] is subordinate to Bank One's right to select a successor manager. Bank One also sought an injunction to bar the defendants from interfering with the debtor's choice of any successor manager approved by Bank One. The Court will grant summary judgment on Count I, with the qualification that the debtor itself cannot be selected as the manager.

### Factual Findings

The material facts are not in dispute. The rights of Bank One and the defendants with respect to the debtor and each other are governed by the July 1, 1996 subordination agreement ("Subordination Agreement"). The parties to that undertaking were Health Care Capital, Inc. ("HCC") (referred to in the agreement as the "Subordinated Creditor"), Bank One Texas, N.A. (designated the "Senior Creditor")[2] and the debtor. Paragraph 2 of the agreement provided in relevant part that:

> Subordinated Creditor expressly and in all respects subordinates and makes junior and inferior (i) the Subordinated Obligations and the payment and the enforcement of the Subordinated Obligations to (ii) the Senior Obligations and the payment and enforcement of the Senior Obligations . . . .

The Subordination Agreement defines *Obligations* as "all debts, liabilities and obligations (of any character whatsoever) of Debtor" to a creditor. Subordination Agreement ¶(1)(f). *Senior Obligations* is defined as all obligations of the debtor to Bank One, "including without limitation all Obligations of Debtor arising under the Reimbursement Agreements." *Id.*,¶(1)(I). Finally, *Subordinated Obligations* are defined

---

[1] The Facilities are the six nursing homes owned by the debtor.

[2] HCC assigned its rights as a creditor of the debtor to HCCC in December 1997. Bank One Texas, N.A. merged with Bank One, N.A. in 2001, which has succeeded to the Texas bank's rights under the parties' agreements.

as any obligations of the debtor to HCC. *Id.*, ¶(1)(j).[3]

Section 9n. of the Reimbursement Agreements[4] allowed the debtor to terminate the Facilities' operator (at that time, HCC) only with the bank's permission. That agreement authorized the debtor to replace the operator only with "a Person acceptable to Bank on terms and conditions acceptable to Bank prior to the effective date of such termination." Thus, the debtor's choice of a replacement manager under the Reimbursement Agreements was an obligation to Bank One.

## Legal Analysis

The Subordination Agreement mandates application of Texas law in its interpretation.[5] Under Texas law, a subordination agreement is "nothing more than a contractual modification of lien priorities and must be construed according to the expressed intention of the parties and its terms." *ITT Diversified Credit Corp., et al. v. First City Capital Corp.*, 737 S.W.2d 803, 804 (Tex. 1987). The parties' intent is determined from the language of the contract in its entirety, affording the words of the contract their "plain, ordinary, and generally accepted meaning . . . ." *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App. -- Amarillo 2000). The court "may not rewrite the agreement to mean something it did not." *Id*.

Given these rules for interpretation and the undisputed facts, the only reasonable construction of

---

[3] Defendants argue that "Obligations" comprises only monetary obligations. This argument fails because the very same definition in the agreement recites that the term includes "all debts, liabilities and obligations (*of any character whatsoever*) . . . ." (Emphasis added.)

[4] The reimbursement agreements were exhibits 5-7 to the memorandum in support of Bank One's motion.

[5] See Subordination Agreement §16, pp.10-11, exhibit 8 to the memorandum in support of Bank One's motion.

the agreements is that HCCC's right to approve or name a successor manager for the debtor's Facilities is subordinate to Bank One's right to do so. In the face of this fairly obvious analysis, the defendants protest that their contractual right to name a manager for the Facilities, which originated in the debtor's April 2, 1990 Subordinated Note in favor of HCC, remained in effect despite the 1996 refinancing that brought Bank One into the debtor's affairs and despite the Subordination Agreement.

HCCC concedes that HCC subordinated its right to approve a new manager or operator for the debtor's Facilities to induce Bank One to refinance Southern Healthcare's debt, although it "never agreed that such right was suspended." See May 3, 2000 affidavit of Michael S. Brown, paragraph 9.[6] It further urges that the July 1, 1996 second amendment to the Subordinated Note ("Second Amendment to Subordinated Note") supports its claim that its management approval rights for the Facilities were unaltered. HCCC argues from this that its right to designate management for the debtor is superior to that of Bank One. However, that conclusion does not follow.

Bank One was not a party to the Second Amendment to Subordinated Note. Accordingly, its rights *vis a vis* HCC were not changed by that document. Indeed, although the Second Amendment to Subordinated Note makes reference to the Subordination Agreement at paragraphs 2 and 3, nowhere does it state that the subordination provisions of that agreement are affected in any way by the amendment to the Subordinated Note. Moreover, HCC's reaffirmation in the Second Amendment of its right to designate a replacement manager has nothing to do with its agreement to subordinate the debtor's obligations to it.[7]

---

[6] Brown is the President of HCCC and was an officer or director of HCC at all times relevant to this opinion.

[7] In fact, the Second Amendment to Subordinated Note contains no language specifically reaffirming HCC's right to designate a replacement manager for the Facilities.

The Subordination Agreement governed the relationship between Bank One and HCC, and the defendants have not offered any evidence that would alter the relative rights of the parties as they were expressed in that document.

Accordingly, the Court will grant summary judgment on Bank One's demand for a declaratory judgment. The Court holds that HCCC and the other defendants' right to select a successor manager for the debtor's Facilities is subordinated to Bank One's right to select a successor manager. The Court will also permanently enjoin the defendants from interfering with the debtor's choice of a successor manager that Bank One approves or to which the bank consents. The latter holding comes with one qualification.

The Court previously appointed a trustee based on its conclusion that the debtor cannot ignore a final state court judgment enjoining it and its affiliate, Foundation Health Services, Inc. ("Foundation"), from operating the Facilities. The injunction to be issued pursuant to this opinion will not allow Bank One to designate either the debtor or Foundation to resume management of the Facilities. To hold otherwise would not only be inconsistent with the Georgia court rulings, but also with this Court's prior ruling under "law of the case" principles. This doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L.Ed.2d 318 (1983). Although application of the doctrine is discretionary, a court should not revisit its prior decisions unless the initial ruling was "'clearly erroneous and would work a manifest injustice.'" *United States v. O'Keefe*, 169 F.3d 281, 283 (5th Cir.1999), quoting *Arizona v. California*, 460 U.S. at 618, n.8. The Court does not find any valid reason to revisit its prior conclusion that the Georgia court judgment bars the debtor and Foundation from management of the Facilities.

5

**Conclusion**

The Court will enter a judgment granting Bank One's Motion for Partial Summary Judgment on Count I of the Amended Complaint with the limitation outlined in this Opinion.

Baton Rouge, Louisiana, February 7, 2003.

<u>**s/ Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE